Filed 2/18/26  San Diego Unified School District v. Zarrabi CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SAN DIEGO UNIFIED SCHOOL DISTRICT, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> RAYAN ZARRABI, <br><br> Defendant and Appellant. | D085415 <br><br><br> (Super. Ct. No. 24CU017379C) |

APPEAL from an order of the Superior Court of San Diego County, Rebecca F. Zipp, Judge.  Affirmed.

Rayan Zarrabi, in pro per, for Defendant and Appellant.

San Diego Unified School District Office of General Counsel, Karin M. Anderson, for Plaintiff and Respondent.

## INTRODUCTION

Ryan Zarrabi appeals a workplace violence restraining order issued against him at the request of San Diego Unified School District (the District)

on behalf of two employees. Zarrabi argues there was insufficient evidence to support the order, that it violated his rights to free speech and due process, and that it causes him disproportionate harm. We affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

I.

*Factual Background*[1]

Zarrabi graduated from Scripps Ranch High School (SRHS), a public high school of the District, in June 2019. M.L. was a vice principal, and D.L. was one of Zarrabi's teachers at the school. A few months after graduating, Zarrabi attended an SRHS football game. As he walked by D.L., Zarrabi raised his middle finger and yelled " 'F--- you Mr. [D.L.]!' " Another vice principal asked Zarrabi to leave the game.

In December 2022, Zarrabi entered the school without permission. After being informed by M.L. and school security that he was not permitted to attend an event on campus, Zarrabi left. However, he was caught sneaking onto campus a short time later through a back gate. M.L. instructed him not to return to the campus again.

In May 2023, Zarrabi attended an SRHS volleyball game at Southwestern Community College. During the game, he sent electronic messages to SRHS students in attendance, commenting that they should be

---

[1]    We summarize the pertinent facts from the declarations and exhibits in the record on appeal. The record does not include a report's transcript and "we must presume that the missing portions of the record would support the trial court's [o]rder." (*City of Los Angeles v. Herman* (2020) 54 Cal.App.5th 97, 103, fn. 3 (*Herman*).) Because this case involves a substantial evidence challenge, we recite the facts in the light most favorable to the prevailing party and resolve all factual conflicts and questions of credibility in its favor. (*Id.* at p. 102.)

in graves and sending them tombstone and middle finger emojis. Upon learning of Zarrabi's harassing and disturbing conduct, M.L. instructed him to leave, requiring assistance of campus police to escort him out. While being escorted out, Zarrabi shouted and cussed at M.L., yelling " 'f--- you,' " and calling him a " 'mother f-----' " and " 'piece of s---.' "

In June 2023, Zarrabi saw M.L. sitting on the outside patio of a local restaurant near SRHS. He yelled out " 'f--- you [M.L.], f--- you,' " while raising his middle finger as he drove by. A few days later, Zarrabi sought out D.L.'s family members on Facebook. He sent messages to D.L.'s brother, sister-in-law, and his brother's adult children. In the messages, Zarrabi stated:

> [D.L.] is the most f----- up racist piece of s--- on the planet that looks like a bald f----- skin cancer f--- head piece of s---. He hopped [*sic*] to fail me on purpose so I don't graduate high school. But I cheated on the chemistry final he made me retake and he failed me on purpose for second semester and I cheated on the online chemistry course. [D.L.] f----- sucks and his plan failed.

This message was followed by middle finger icons.

In February 2024, Zarrabi sought out M.L.'s and D.L.'s coworker, a teacher at the school, on Facebook. He repeated the same message he sent to D.L.'s family members in June 2023 and added:

> F--- [M.L.] He is the biggest giant piece of s--- I have met in my life. He has a Ph.D in psychology and you're the biggest f----- a-- hole of all time. I have always wanted to say f--- you to [M.L.] and my wish finally came true. F--- [D.L.] That bald f----- skin cancer f--- head. Just to let you know I cheated on that re take chemistry final first semester in my junior year in that bald f----- skin cancer f--- head [D.L.] class and I cheated on the online retake chem class in my first semester of my senior year. I know your [*sic*] banned me from coming back to SRHS and I could give less of a s--- coming back. I don't ever want to come back to see you in my life ever again because your [*sic*] a f----- a-- hole. SRHS will be the worst high school in San Diego county having you as the

principal and still having that bald f------ skin cancer f--- head [D.L.] at that school. I hope you guys lose every game for the athletics every year.

This was again accompanied by middle finger icons, as well as photos of D.L. and M.L. with middle finger icons appearing over them.

In May 2024, a witness, who wished to remain anonymous due to fear of retaliation from Zarrabi, "flagged down" police to report threatening remarks Zarrabi made about M.L. and D.L.  The witness said Zarrabi "spoke quickly and spastically about his hatred and [disdain]" for SRHS, M.L., and D.L.  About M.L. and D.L., Zarrabi stated, " 'He's the worst and I hope he dies,' " admitting it was " 'all [he] can think about' " and that he " 'can't sleep.' "  Zarrabi stated further, " 'I'm going to get my f------ revenge' " and " 'They don't deserve to live on this f------ planet.' "  In response, police prepared a crime/incident report, a suspicious activity report and psychiatric emergency response team referral.  Shortly after, a police officer went to SRHS to report the threats to M.L. and advised him to seek a restraining order.

Since then, Zarrabi has continued to express to third parties, including SRHS students in public settings, his desire to " 'go after' " M.L. and D.L.

## II.

### *Procedural History*

In October 2024, the District filed a petition for a workplace violence restraining order on behalf of M.L. and D.L., and requested that M.L.'s immediate family members be included as additional protected persons.  The trial court granted a temporary restraining order as requested, "based on a credible threat of violence or stalking" and set a hearing.

In November 2024, Zarrabi submitted his written response to the District's petition.  In his response, Zarrabi asserted the petition contained

4

"false accusations and baseless claims" and that he had not been near SRHS since December 2022. He also claimed that he had been mistreated by M.L. and D.L.

Following a hearing in November 2024, the trial court granted the District's petition. It enjoined Zarrabi from certain personal conduct against M.L., D.L., and M.L.'s immediate family members, including staying 100 yards away from their workplace, homes, and vehicles, as well as SRHS events that are not held at the SRHS campus.

DISCUSSION

I.

*Relevant Legal Principles*

Code of Civil Procedure[2] section 527.8 authorizes an employer to seek a restraining order on behalf of its employees to prevent threats or acts of violence in the workplace by another employee or a third person. (*Scripps Health v. Marin* (1999) 72 Cal.App.4th 324, 333–334.) Subdivision (a) of section 527.8 provides: "Any employer . . . [whose] employee . . . has suffered harassment, unlawful violence or a credible threat of violence from any individual, that can reasonably be construed to be carried out or to have been carried out at the workplace, may seek a temporary restraining order and an order after hearing on behalf of the employee and, at the discretion of the court, any number of other employees at the workplace, and, if appropriate, other employees at other workplaces of the employer."

The statute defines " '[u]nlawful violence' " as "any assault or battery, or stalking as prohibited in Section 646.9 of the Penal Code, . . . [excluding] lawful acts of self-defense or defense of others." (§ 527.8, subd. (b)(8).)

---

2  Undesignated statutory references are to the Code of Civil Procedure.

" 'Credible threat of violence' " is defined as "a knowing and willful statement or course of conduct that would place a reasonable person in fear for their safety, or the safety of their immediate family, and that serves no legitimate purpose." (*Id*., subd. (b)(2).) A " '[c]ourse of conduct' " is defined as "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including following or stalking an employee to or from the place of work; entering the workplace; following an employee during hours of employment; making telephone calls to an employee; or sending correspondence to an employee by any means, including, but not limited to, the use of the public or private mails, interoffice mail, facsimile, or computer email." (*Id*., subd. (b)(1).)

In reviewing an evidentiary challenge to a workplace violence restraining order, " 'an appellate court must account for the clear and convincing standard of proof . . . . [T]he question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true. In conducting its review, the court must view the record in the light most favorable to the prevailing party below and give appropriate deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence.' " (*Technology Credit Union v. Rafat* (2022) 82 Cal.App.5th 314, 323.)

Under this "highly deferential" standard of review, "[i]f substantial evidence supports factual findings, those findings must not be disturbed on appeal. Inferences favorable to appellants may create conflicts in the evidence, but that is of no consequence. When a civil appeal challenges findings of fact, the appellate court's power begins and ends with a

6

determination of whether there is any substantial evidence—contradicted or uncontradicted—to support the trial court findings." (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 581–582 [cleaned up].) A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness. (*Association for Los Angeles Deputy Sheriffs v. County of Los Angeles* (2023) 94 Cal.App.5th 764, 776–777.) So it is the appellant's responsibility to affirmatively demonstrate error by providing the reviewing court with some cogent argument supported by legal analysis and citation to the record. (*Id.* at p. 777.) And it is the appellant's burden to rebut the presumption of correctness that we accord the trial court's decision, regardless of the applicable standard of review. (*Ibid.*) A corollary of the presumption of correctness is the doctrine of implied findings, which requires the appellate court to infer, following a bench trial, that the trial court impliedly made every factual finding necessary to support its decision. (See *Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981.)

II.

*Zarrabi Is Precluded from Arguing Lack of Sufficient Evidence*

To begin with, Zarrabi forfeited his argument that the restraining order is not supported by sufficient evidence by failing to include an agreed or settled statement in place of a reporter's transcript of the November 2024 hearing. (See Cal. Rules of Court, rule 8.134(a)(1).) He confirmed his understanding that "without a record of the oral proceedings . . . in the superior court[,] . . . the Court of Appeal will not be able to consider what was said during those proceedings in deciding whether an error was made in the superior court proceedings." (Capitalization omitted.) It is settled that "[w]here no reporter's transcript has been provided and no error is apparent on the face of the existing appellate record, the judgment must be

7

*conclusively presumed correct* as to *all evidentiary matters*.  To put it another way, it is presumed that the unreported trial testimony would demonstrate the absence of error.  The effect of this rule is that an appellant who attacks a judgment but supplies no reporter's transcript [or agreed on settled statement in lieu of a reporter's transcript] will be precluded from raising an argument as to the sufficiency of the evidence." (*Estate of Fain* (1999) 75 Cal.App.4th 973, 992 [cleaned up].)  "The trial court's findings of fact and conclusions of law are presumed to be supported by substantial evidence and are binding on the appellate court, unless reversible error appears on the record." (*Bond v. Pulsar Video Productions* (1996) 50 Cal.App.4th 918, 924.)

III.

*Substantial Evidence Supports the Workplace Violence Restraining Order*

In any event, Zarrabi's argument fails on its merits because even without a reporter's transcript, the record contains substantial evidence supporting the trial court's determinations.  (§ 527.8, subds. (a), (b).)

"An employer may seek relief under section 527.8 on behalf of any employee who is credibly threatened with unlawful violence, whether or not that employee is identified by the defendant." (See *USS-Posco Industries v. Edwards* (2003) 111 Cal.App.4th 436, 443.)  Put differently, "an employer subjected to generalized threats of workplace violence may obtain relief under section 527.8 on behalf of an employee who is a logical target of the threats." (*Id.* at p. 438.)  A credible threat does not need to be conveyed directly to the target of the threat.  (See *Kaiser Foundation Hospitals v. Wilson* (2011) 201 Cal.App.4th 550, 554–555 (*Kaiser*) [upholding workplace violence restraining order where protected party learned of threat against her from the police].)  "[W]hether the threat is conveyed by conduct or pure speech is irrelevant." (*City of San Jose v. Garbett* (2010) 190 Cal.App.4th 526, 539 (*Garbett*).)  Even

8

if the restrained party did not make "an express verbal threat," it is sufficient that his "actions" constitute a credible threat of violence. (*Harris v. Stampolis* (2016) 248 Cal.App.4th 484, 498.)

The evidence here includes declarations from M.L. and D.L. that Zarrabi entered the SRHS campus without permission; that he attended an SRHS volleyball game off campus and repeatedly shouted vulgar profanity at them; that he shouted vulgar profanity at M.L. while M.L. attended a staff party at a local restaurant; that he had tracked down D.L.'s family members and a co-worker and sent them messages with hateful and derogatory speech; and that Zarrabi told a third party he wished D.L. " 'would die' " and that he would " 'get [his] f------ revenge' " and that D.L. and M.L. " 'don't deserve to live on this f---ing planet.' "  He has subsequently threatened to " 'go after" them.' "  The testimony of one witness, even that of a party, may constitute substantial evidence sufficient to support the court's rulings. (*In re Marriage of F.M. & M.M.* (2021) 65 Cal.App.5th 106, 119; *Kaiser, supra,* 201 Cal.App.4th at p. 557 ["the hearing may be based on affidavits or declarations, which are themselves a form of hearsay evidence"].)

Moreover, the restraining order is supported by copies of Zarrabi's threatening electronic messages and a police report containing Zarrabi's threatening remarks to a third party. Substantial evidence, largely uncontroverted by Zarrabi, supports that his statements and conduct amounted to credible threats of violence prohibited by section 527.8. (*Kaiser, supra,* 201 Cal.App.4th at p. 557 ["as long as the hearsay evidence presented at a section 527.8 hearing is relevant, the court is to consider it"].)  The record also supports that M.L. and D.L. reasonably feared for their own and their family members' safety. (§ 527.8, subd. (b)(2).)

Zarrabi argues his conduct should not be enjoined because he was merely "expressing frustration online or wishing karma on school officials." The trial court did *not* make this finding. But still, his "subjective intent was not required for his conduct to be deemed a credible threat." (*Garbett*, *supra*, 190 Cal.App.4th at p. 538; see also *Herman, supra,* 54 Cal.App.5th at pp. 101–105 [holding that restrained party's claim that he "did not actually intend to harm" the protected person, "even if true, does not change [the] analysis"]

IV.

*Zarrabi's First Amendment Rights Were Not Infringed*

Zarrabi does not put forward a cogent First Amendment argument or support it with relevant citations. Apart from arguing that his "statements about hoping karma would affect the petitioners were expressions of frustration and emotional harm—not threats," he does not identify what speech or conduct he believes is protected by the First Amendment. Moreover, the cases he cites do not provide him any support. *City of San Jose v. Superior Court* (1993) 5 Cal.4th 47, for example, does not involve claims of protected speech. (*Id.* at pp. 49–50 [addressing "scope of discovery of peace officers' personnel records" under the Evidence Code].) *Near v. Minnesota* (1931) 283 U.S. 697, involves a 100-year-old Minnesota state law the Supreme Court struck down as "an infringement of the liberty of the press guaranteed by the Fourteenth Amendment." (*Id.* at pp. 722–723; see *id.* at p. 701.) In his reply brief, he cites *Snyder v. Phelps* (2011) 562 U.S. 443, but the speech there involved "broad issues of interest to society at large, rather than matters of 'purely private concern.' " (*Id.* at p. 454.)

Here, by contrast, Zarrabi has no First Amendment right to personally threaten his former teacher and vice principal. As the court in *Garbett,*

10

*supra,* 190 Cal.App.4th at page 537 explained, "it is clear that if the elements of section 527.8 are met by the expression of a credible threat of violence toward an employee, then that speech is not constitutionally protected and an injunction is appropriate." Because we have already determined substantial evidence supported issuance of the restraining order, Zarrabi's speech is not constitutionally protected.

V.

*Zarrabi's Due Process Rights Were Not Violated*

Zarrabi claims the trial court violated his due process rights when it issued the restraining order. Specifically, he complains the declaration of an officer, Jess Allensworth, was submitted days before the hearing and that he did not receive it until after the hearing. He has not, however, provided evidence to support his claim he did not receive the declaration in a timely fashion. There is also no evidence the trial court even considered it. Moreover, even if he had presented such evidence, he has not shown the outcome would have been different. As discussed previously, M.L.'s and D.L.'s declarations and supporting exhibits were sufficient to support issuance of the restraining order. (See *Bookout v. Nielsen* (2007) 155 Cal.App.4th 1131, 1138 ["Declarations favoring the prevailing party's contentions are deemed to establish the facts stated in the declarations, as well as all facts which may reasonably be inferred from the declarations."].)

In short, Zarrabi has failed to show " 'that the trial court acted in an arbitrary, capricious, or absurd manner resulting in a miscarriage of justice.' " (*People v. Powell* (2018) 5 Cal.5th 921, 951.) In *Herman, supra,* 54 Cal.App.5th 97, the Court of Appeal rejected a similar due process argument because the defendant "had the opportunity to question witnesses and to provide his own evidence and argument." (*Id.* at p. 105.) For all these

11

reasons, Zarrabi has failed to establish there were any procedural irregularities warranting reversal of the restraining order.

## VI.

### *Zarrabi's Disproportionate Harm Argument Fails*

Finally, Zarrabi claims he is inappropriately harmed by the restraining order due to reputational damage and interference with employment prospects. Zarrabi, however, fails to support his conclusory argument with citations to evidence or relevant legal authority.

As a party appearing in propria persona, Zarrabi " 'is entitled to the same, but no greater, consideration than other litigants and attorneys.' " (*Tanguilig v. Valdez* (2019) 36 Cal.App.5th 514, 520.) Consequently, we may disregard "factual contentions that are not supported by citations to the record" and "legal arguments that are not supported by citations to legal authority." (*Ibid.*) Here, Zarrabi failed to provide evidence of disproportionate harm and failed to provide authority showing the level of harm is a relevant factor in granting a workplace violence restraining order. Accordingly, his argument is waived. But, even if we were to consider Zarrabi's argument, we would reject it. The record before us does not establish that any potential harm to him due to the workplace restraining order is "disproportionate" to the need for protection.

## DISPOSITION

The workplace violence restraining order is affirmed. Respondent is entitled to recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

                                                                                              DO, J.

WE CONCUR:


IRION, Acting P. J.


BUCHANAN, J.